IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROLAND WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:18-CV-1783-MAB** |
| | ) | |
| **PENNY GEORGE, KEVIN MURPHY, ALFONSO DAVID, and MATTHEW SWALLS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on (1) the motion for summary judgment on the issue of exhaustion filed by Defendants Penny George and Kevin Murphy (Doc. 41),[1] (2) the motion to dismiss Defendants' motion for summary judgment filed by Plaintiff Roland Wilson (Doc. 59), Plaintiff's motion for extension of time to file an amended complaint (Doc. 57), and Plaintiff's motion for leave to file an amended complaint (Doc. 58). For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's motions are denied.

[1] The motion for summary judgment was filed on behalf of Penny George, Kevin Murphy, and Matthew Swalls (Doc. 41). However, the question of exhaustion does not actually pertain to Swalls because he was named as a Defendant in his official capacity only for the purpose of responding to discovery aimed at identifying the unknown Defendant and for carrying out any injunctive relief that might be ordered (Doc. 10). Consequently, the Court will only consider the motion as to Penny George and Kevin Murphy. The Court also notes that Defendant Alfonso David did not move for summary judgment on the issue of exhaustion.

## Background

Plaintiff Roland Wilson brought this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while incarcerated at Vienna Correctional Center. More specifically, he claims that his medical records have been mixed up with another inmate named Deon Wilson. As a result, Plaintiff claims he has not been receiving appropriate medical care. Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Eighth Amendment claim against Dr. Alfonso David for failing to treat Plaintiff's painful condition (Spongiotic Psoriasiform Dermatitis), and against Health Care Unit Administrator Penny George for failing to take steps to remedy the alleged denial of treatment.
>
> **Count 2:** Eighth Amendment claim against an unknown female nurse for causing Plaintiff to ingest the wrong dosage of Buspar on February 22, 2018, despite Plaintiff alerting him to the mistake.

(Doc. 10; Doc. 31). Plaintiff later identified the unknown female nurse as Kevin Murphy (Doc. 27), even though Murphy is a male.

Defendants George and Murphy filed their motion for summary judgment on June 17, 2019, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 41; Doc. 45). Specifically, George and Murphy indicate that there are three relevant grievances, none of which name or describe them and therefore cannot be used to exhaust as to them.

Plaintiff filed a response to the motion on August 19, 2019 (Doc. 48). In his response, Plaintiff asks the Court to "quash and dismiss" the motion for summary

judgment. He claims that Vienna does not respond to grievances in a timely fashion and changes dates on the grievances. He included exhibits suggesting that he submitted a fourth grievance. He also included a declaration from an inmate law clerk at Vienna attesting to issues with the grievance process. Defendants did not file a reply brief. On February 14, 2020, Plaintiff filed a motion to dismiss Defendants' motion for summary judgment (Doc. 59). He describes his efforts to exhaust his administrative remedies and claims Defendants' motion for summary judgment is misleading and without merit and should be dismissed.

An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on February 25, 2020 (Doc. 60). Plaintiff testified at the hearing as did Maribeth Ethridge-Hicks, who testified that she was working as a "correctional counselor II" during the relevant time period.

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740,

745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Normally, the court cannot resolve factual disputes on a motion for summary judgment; they must be decided by a jury. *E.g., Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is the standard means of resolving factual disputes . . . .") The opposite is true, however, when the motion for summary judgment pertains to a prisoner's failure to exhaust. The Seventh Circuit has instructed courts to conduct an evidentiary hearing in order to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts*, 745 F.3d at 234.

***Exhaustion***

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process

outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations first require an inmate to file his or her grievance with his or her counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. *Id.* at § 504.810(a).[2] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden) within two months, "when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.*

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840. If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance. *Id.*

Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). 20 ILL. ADMIN. CODE § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director. *Id.* at § 504.850(d). The Director then makes a final determination of the grievance "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances," in

[2] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

the case of a normal grievance. *Id.* at § 504.850(e). If the grievance was processed as an emergency, however, the ARB "shall expedite processing" of the appeal. *Id.* at § 504.850(f).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners primarily when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## FACTUAL BACKGROUND

Defendants submitted grievance records from Vienna and the Administrative Review Board with their motion for summary judgment (Docs. 41-1, 41-2, 41-3, and 45). The cumulative counseling summary was admitted as an exhibit at the *Pavey* hearing. The records contain three grievances related to medical care dated February 6, 2018, March 1, 2018, and March 12, 2018.

The **grievance dated February 6, 2018** (grievance number vc-12-03-018), (Doc. 41-1, pp. 14–17), is fully exhausted. In this grievance, Plaintiff complains that he mistakenly had blood drawn for lab tests that were ordered for another inmate named Deon Wilson. Plaintiff's counselor received the grievance on February 7th and responded that she had spoken to the Heath Care Unit Administrator, Penny George, and the blood drawn from Plaintiff on February 6th was for labs the doctor ordered on February 2nd for Plaintiff,

not Deon Wilson. The grievance officer received the grievance on March 19th and reviewed it on April 1st. The warden then denied the grievance on May 8th. Plaintiff appealed to the ARB, where his grievance was received on May 17th. The ARB denied the grievance on June 6th, finding the issue was appropriately addressed by the administration at Vienna.

In the **grievance dated March 1, 2018** (grievance number 17-03-018), Plaintiff complained that he was repeatedly given the wrong medications and/or dosages at the medication line (Doc. 41-1, pp. 2–5). Plaintiff indicated in pertinent part that on February 22, 2018, he was missing his Tramadol pills. He alerted "the female nurse," who then brought him three extra Buspar pills instead of the Tramadol. When he alerted her again, she yelled at him "Let me do my job!" She ultimately gave him the Tramadol pills but left the extra Buspar pills in Plaintiff's dose cup. Plaintiff wanted to avoid a confrontation, so he took the extra Buspar. Plaintiff indicated that he thinks he continues to receive the wrong medication and/or dosage because he is being confused with Deon Wilson.

Plaintiff's counselor received the grievance on March 6th and responded on March 8th. The counselor indicated that she had consulted with the health care unit and the medication administration procedures would be reviewed with all nursing staff and Plaintiff should write to Don Vinyard if he had any other problems. The grievance officer received the grievance on March 23rd and reviewed it on May 21st. The grievance officer recommended denying the grievance. The warden concurred with the recommendation and denied the grievance on May 30th. Plaintiff appealed to the ARB, where his grievance

was received on July 6th. The ARB returned the grievance without addressing it because it was received more than thirty days after the warden's decision.

At the *Pavey* hearing, Plaintiff was asked questions as to when he received the warden's decision and when he mailed his appeal to the ARB. His testimony was difficult to follow and he didn't provide any definitive answers. Maribeth Ethridge-Hicks then testified that, according to her notes in the cumulative counseling summary, she returned the warden's decision to Plaintiff via the institutional mail on June 1, 2018. She further testified that it normally takes about two business days for an item placed in the institutional mail to get to the offender.

The **grievance dated March 12, 2018 (**grievance number vc-15-04-018), (Doc. 41-1, pp. 6–13), is fully exhausted. In this grievance, Plaintiff complained about numerous instances in which health care staff at Vienna confused him with Deon Wilson (Doc. 41-1, pp. 6–13). He further complained that he is not getting adequate treatment for an issue with his feet, an issue with stomach acid, chronic obstructive pulmonary disease, and hypertension. Notably, Plaintiff did not complain about any specific instances in which medication was administered improperly (*see id.*). He simply mentioned as background information that he "[a]lso had a issue with another Wilsons pills at medline which is stated in another previous grievance" (*id.*).

Plaintiff's counselor received the grievance on March 19th and responded on April 3rd, stating that they had consulted with the health care unit and plaintiff had received all medical treatment prescribed for him. The grievance officer received the grievance on April 11th and reviewed it on April 17th. The grievance officer indicated that Plaintiff

had submitted duplicate grievances regarding his medical files being mixed up with Deon Wilson's medical files, and that Plaintiff had received all treatments prescribed. For those reasons, the grievance officer recommended denying the grievance. The warden then denied the grievance on May 8th. Plaintiff appealed to the ARB, where his grievance was received on May 18th. The ARB denied the grievance on June 25th, finding the issue was appropriately addressed by the administration at Vienna.

Plaintiff's response to the motion for summary judgment suggests there was a fourth grievance submitted on March 21, 2018, to which he did not receive a response (Doc. 48-1, pp. 2–13). On June 20th, he wrote to his counselor asking about the status of the grievance (*Id.*). It appears that Plaintiff simply resubmitted his March 12th grievance a second time on March 21st (*see id.*). His counselor indicated that she received the grievance on June 26th and she responded the next day that this was a duplicate grievance that had already been addressed (*Id.*; *see also* Cumulative Counseling Summary). There is no indication that Plaintiff took any further action with respect to this grievance.

## DISCUSSION

### A. Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment (Doc. 59)

This motion is denied. Plaintiff fails to convince the Court that Defendants' motion for summary judgment should be "dismissed" or stricken. Rather, the Court is convinced the motion for summary judgment should be decided on the merits.

### B. Defendants George and Murphy's Motion for Summary Judgment on the Issue of Exhaustion (Doc. 41)

As an initial matter, the Court must decide whether the three grievances described above were fully exhausted. The Court will then determine whether the exhausted grievances were sufficient to cover Defendants George and Murphy.

#### 1. Were the grievances exhausted?

The records demonstrate that the February 6th grievance and the March 12th grievance (which Plaintiff submitted twice) are both fully exhausted. As for the March 1st grievance, Plaintiff appealed this grievance to the ARB, and the ARB marked it as untimely because it was received more than thirty days after the warden's decision. 20 ILL. ADMIN. CODE § 504.850(a). Plaintiff did not provide any evidence or testimony to suggest that he was thwarted from mailing his appeal to the ARB sooner (for example, his grievance was mishandled which led to a delay in him receiving the warden's decision). Nor did he provide any evidence or testimony to suggest that he placed his appeal in the prison's mailbox before the 30-day deadline to appeal expired.[3] Consequently, the Court concludes that Plaintiff failed to file his appeal within the time required, and therefore the March 1st grievance is unexhausted.

#### 2. Kevin Murphy

---

[3] *See Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013) (finding mailbox rule applied to appeal placed in mail within 30-day period but received by ARB outside the time to appeal); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding prisoner filed timely appeal to the ARB by placing it in prison mail system even though it was never received by the ARB); *Dewalt v. Pitts*, No. 12-CV-118-MJR-SCW, 2013 WL 4051704, at *5 (S.D. Ill. Aug. 11, 2013) (grievance appeal "is deemed submitted the day that it was mailed"); *Schadel v. Evans*, Case No. 09–1338, 2010 WL 2696456, at * 2 (C.D. Ill. July 7, 2010) (finding appeal was timely when it was placed in the mail one day before the 30-day deadline).

Plaintiff originally claimed that an unknown female nurse was deliberately indifferent when she caused Plaintiff to ingest the wrong dosage of Buspar on February 22, 2018, despite Plaintiff alerting him to the mistake (Doc. 1; Doc. 10). Plaintiff later identified the unknown female nurse as Kevin Murphy (Doc. 27).

The only grievance that mentions the February 22nd incident is the March 1st grievance. The Court has determined that this grievance was unexhausted. Therefore, Plaintiff failed to exhaust his administrative remedies as to the nurse involved in the February 22nd incident, who is presently identified as Kevin Murphy.[4] Murphy is thus entitled to summary judgment and shall be dismissed without prejudice as a Defendant in this case.

**3. Penny George**

Plaintiff's claim against Penny George, the Health Care Unit Administrator, is that she was deliberately indifferent by failing to take steps to remedy the alleged denial of treatment of his painful foot condition: Spongiotic Psoriasiform Dermatitis. Defendant George argues the above-described grievances were insufficient to exhaust as to her because she was not named or described in the grievances (Doc. 41).

Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when,

---

[4] Plaintiff identified Kevin Murphy—who is male—as the nurse who gave him the wrong dosage of Buspar on February 22, 2018, even though he had previously indicated in the March 1st grievance and in his complaint in this matter that the nurse was a female. However, there is a currently pending motion in which Plaintiff asks to substitute Mary Ann Schutt for Kevin Murphy (Doc. 58). Regardless of the nurse's identity—whether the nurse was Schutt or Murphy or someone else entirely—Plaintiff failed to exhaust as to them.

where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c) (2017). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.*

The grievance forms used by Plaintiff also instructed that he was to "provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved" (Doc. 41-1, pp. 4, 8, 16). *Contra Maddox v. Love*, 655 F.3d 709, 721, 722 (7th Cir. 2011) (finding inmate did not fail to exhaust even though grievance did not contain any names because, while the regulation required offender to name or describe the individual, the grievance form itself did not indicate that a name had to be provided); *Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013) ("We have held that when a prisoner uses a grievance form asking only for a 'Brief Summary of Grievance,' . . . then the omission of names or identifying information does not necessarily mean that the prisoner failed to exhaust his administrative remedies so long as he otherwise followed the grievance process.")

Here, Plaintiff did not name Penny George in any of the above-described grievances or describe any conduct that can be imputed to her. Furthermore, there is nothing in the grievances that suggests health care administrators were a target of Plaintiff's complaints because they turned a blind eye to the purportedly inadequate medical care he was receiving for his foot condition. Instead, Plaintiff only complains in these grievances about the actions of the nurses, nurse practitioners, and doctors and the medical care he received from them. Complaining that medical staff is providing

inadequate treatment is a distinct and unique claim from complaining that administrators are ignoring his complaints about the treatment he received or failing to ensure that he received adequate treatment. As such, the grievances cannot serve to exhaust Plaintiff's claims against Penny George. *See Roberts v. Neal Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014); *Waldrop v. Wexford Health Sources, Inc.*, 646 Fed.Appx. 486, 490 (7th Cir. 2016) (unpublished opinion). Penny George is entitled to summary judgment and shall be dismissed without prejudice as a Defendant in this case.

**C. Plaintiff's Motion for Extension of Time to File an Amended Complaint** (Doc. 57)

Plaintiff was given until July 17, 2019**,** to file to amend the complaint to include any additional claims or parties (Doc. 37). Approximately seven months after that deadline passed, Plaintiff filed the instant motion asking the Court for a 45-day extension to file an amended complaint "to make the proper and factual statements into the Court" (Doc. 57). Plaintiff does not provide any other details about his proposed amendment. For example, he does not explain if he wants to keep the claims and Defendants the same but simply change or add to his factual allegations, or if he wants to add a new claim or a new Defendant. To the extent that he wants to add a new Defendant, Plaintiff does not explain why he believes he should be allowed to do so at this point in the litigation. *See* FED. R. CIV. P. 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.")

The lack of detail in the motion makes it impossible for the Court to determine whether an extension of time is necessary in order to amend the complaint, and if so,

whether it is warranted under the circumstances. Consequently, the motion is denied. Plaintiff is free to refile the motion and provide more information to the Court about the amendment he wants to make to the Complaint.

**D. Plaintiff's Motion For Leave to File an Amended Complaint** (Doc. 58)

This motion is really a motion to substitute Mary Ann Schutt for Defendant Kevin Murphy. In other words, Plaintiff figured out that the nurse who he believes gave him the wrong dosage of Buspar on February 22, 2018 was Mary Ann Schutt, *not* Kevin Murphy. Given the Court's previous ruling that Plaintiff failed to exhaust his administrative remedies as to the nurse and the dismissal of Kevin Murphy as a Defendant, Plaintiff's motion to substitute is denied as moot.

## CONCLUSION

Plaintiff Roland Wilson's Motion to Dismiss Defendants' Motion for Summary Judgment (Doc. 59) is **DENIED.**

Plaintiff's Motion for Extension of Time to File an Amended Complaint (Doc. 57) is **DENIED**.

Plaintiff's Motion For Leave to File an Amended Complaint (Doc. 58) is **DENIED as moot**.

The motion for summary judgment on the issue of exhaustion filed by Penny George and Kevin Murphy (Doc. 41) is **GRANTED.** Defendants George and Murphy are **DISMISSED without prejudice**.

This matter shall proceed on Plaintiff's Eighth Amendment claim against Dr. Alfonso David for failing to treat Plaintiff's painful condition (Spongiotic Psoriasiform Dermatitis) (Count 1).

The stay on merits-based discovery (*see* Doc. 37) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claim against Dr. David. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: February 27, 2020**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**